If I may have mispronounced your client's name, is it Janee or is it Janee Janee? Not to worry, Your Honor. Good morning, may it please the Court. My name is Anne Shaver, and I represent Plaintiff Appellants v. Janee. The question before the Court today is whether DuPont's stock award contract is ambiguous. And to decide that question, the Court is called upon to step into the issues of the proverbial reasonable person. Here, an employee who is possessed of uninvested stock options, whose employment is discriminated not for cause, but due to lack of work, poor disability, or divestiture of a portion of the company to another company. In order to make that decision, the Court must take all reasonable inferences in the employee's favor and decide whether the contract is fairly susceptible of the interpretation she gave him. The Court does not have to decide which party's interpretation is the right one or even the best one, but only whether this language is susceptible of multiple reasonable interpretations. If the answer is yes, then the District Court must be reversed. In finding no ambiguity, the District Court here replied on a couple of really critical inaccuracies in the record that I'd like to address. The first one has to do with when the uninvested options would expire under Ms. Jane's interpretation. So, to the point argued to the District Court. I don't have time to answer this question. I don't think any of your points play bridge, but as they play bridge, there's the concept of trump, and it's not a political term, it's a bridge term. And what basically is the key issue here is whether the availability of an option trumps the invested rate. Do you see what I mean? That is, that the investing is subsidiary to the existence of the option. I agree with all of your arguments. Most of your arguments use that. This paragraph that's an issue here could have been changed much more clearly, but I'm not sure if you're going to rely on that. Since it's the option, you'll see that it's ambiguous. But what is your position on that? And I don't think anybody agrees specifically in this way that investing depends on the existence of the option, and that the option is subsidiary. Isn't that the best theory at the moment? So, I'm glad Your Honor raised that, because the vesting absolutely is based on a condition precedent, and that is the option being exercisable. So, the contract is careful in several different places to draw a distinction between options that are vested and, therefore, exercisable, and options that are unvested and, therefore, unexercisable. And this goes to the error that one of the errors of the district court relied on, which is the definition of options. To point out that options is defined on page 1 of the awards terms. That's an excerpt of record, page 140, as all options. But, in fact, on that page, it just sets forth the type of options being awarded, non-qualified stock options, because there are multiple types of options that could be awarded under this plan. But the district court argued, and the district court agreed, that options means all options. Well, if you look at the language of this paragraph, it doesn't say all options will expire. It says any unexercised options will expire. And to your point, Your Honor, that distinction is actually made in several places within this contract. It's a whole other question. Can you throw this out to the court, if I may? Because I think the laws of contract construction say that the court has to look at It doesn't either, but I would assume that the options are still in effect, given that they're unexercised. Is that correct? Yes, Your Honor. The options are still in effect because they are They may be unexercised, but they also may have expired. Is that correct? That is one possible outcome for options. But I don't agree with Your Honor that that's what the contract here says will happen. Well, why would any kind of objection make for a reasonable person looking at the phrase any unexercised options will expire, and conclude that the phrase refers only to vested but not unvested options? The term any seems to be significant in this phrase. Yes, Your Honor. It has to do It seems like you're asking us to read that term out of the phrase to me. No, Your Honor. We're not asking you to do that. It has to do with the construction of the paragraph as a whole. Because the term any unexercised options will expire is directly followed by the term any unvested options, as of the date of declaration, will continue to vest. So I think that the paragraph, and not just this paragraph, but multiple places within the contract draw a distinction between unexercised options and unvested options that make this contract reasonably susceptible of going in with GPO. Okay, then an unvested option would be an unexercised option. Yes, an unvested option is unexercised. And I would point the Court to a couple of places in the contract where I think that this distinction is made. The first one is in the prospectus, which is at ER 92. That draws a very clear distinction between exercisable versus non-exercisable options. And it alerts employees that the exercisability of your options depends on the requirements of the stock rate. I'll describe below, and then it goes into vesting and when options become vested. The second place is in Excerpture Record 50, page 59. There in paragraph 60, it says, In the event of termination when an employee is terminated, options that are exercisable shall remain exercisable for such period as may be provided in the applicable award terms. But in no event following the expiration of their term, the treatment of any option that is unexercisable as of the date of such termination shall be as set forth in the applicable awards terms. So even there in the contract, it recognizes that the awards terms may well give different treatment to vested exercisable options versus unvested and unexercisable options. Now, the court, in deciding whether Ms. Jane's interpretation is a reasonable one, may wish to look at the purpose of the plan. Fortunately, the purpose of the plan is set forth in Excerpture Record, page 54. This is the first page of the incentive and award plan. And it says what the purpose is. And the first, there are multiple purposes that are, I think, consistent with Ms. Jane's interpretation. The first one is to attract employees. So as we alleged in paragraph 9 of our complaint, DuPont operates an engineering industry in Silicon Valley. It's a volatile industry. There is high involuntary turnover and there is fierce competition for talent. Also, employee compensation in this industry comes significantly from equity awards. So it would be a significant draw to employees to know that if they lose their job, not for fault, but because of some corporate business decision that's made above their heads, they won't lose all of that compensation. But you argue that DuPont's interpretation, I think you say, allows for compensation to be retroactively recruited by the company before employees would have a chance to exercise any of the options. But is it true that stock options are generally perceived as incentive-based compensation for employees? It seems different than actual monetary compensation. So, Your Honor, stock awards are different than salary, for sure. But the operative contract by pursuit to which a company grants awards can be written in different ways. And in the contract here, what matters is the language as it's written here. The equity incentive plan says that one of the purposes of the plan is to reward employees for their performance. It says on ER54 to permit the payment of compensation that qualifies as performance-based. So if part of the purpose of the plan is to compensate employees for their performance, then from their perspective, it doesn't make sense that they would lose that compensation entirely when they lose their job, again, through no fault of their own. That's one of the reasons that's tied to the purpose of the plan and makes Ms. Jane's interpretation a reasonable one. Okay. Now, here's a question I would actually like to answer. I don't know if everybody can type. That's fine. In the DuPont breakthrough pages, they give an example of how the plan would work with their investment options, and they attempt to explain how a list in which you have contained pieces of plussage and therefore should be disregarded would, in fact, be enforced. I don't know if you might have seen it here, but a brief thing you haven't actually answered. It actually doesn't go up anywhere. It's not an issue. I'd like to address that and rebuttal it for you this month. You can press it down if you want. We're new. Yes. I'm sorry. You guys are here so long. Just give me a minute. They give these people February 2013 options granted. A couple of years later, February 2014, transfer on a free VINs. June 2013, the employees terminate. February 2015, trips to a free VIN. And then June 15, quote, any unexercised options, close quote. Thanks, Mary. I'd be happy to address that, Your Honor. It's actually not a hypothetical. It's exactly what happened to Ms. Jane's options under DuPont's interpretation of the plan. So our position is not that the last sentence is superfluous. Only that under their interpretation, the last sentence is superfluous. So that result is not mandated by the way that this contract is read. It's only mandated by their interpretation of it. So, in other words, another very reasonable interpretation of this language is how Ms. Jane interpreted it. What they're setting forth is simply this is how we see it. But the question before the court is whether Ms. Jane's interpretation is also a reasonable one. And the fact that this set, the paragraph at issue here, terminates with that sentence without referring back to any of the above portions. I mean, the sentence that says any unexercised options will expire clearly refers back to the sentence before. It says after that date, comma. So it's alluding to the sentence before. But that final sentence ends the paragraph, doesn't refer back to any of the above language, and it makes this distinction for any uninvested options versus any unexercised options. It's a distinction which, again, is made in multiple cases throughout the country. But does it bar DuPont from arguing that all uninvested options automatically expire upon an employee's termination? Well, that's not DuPont's position here for this category of employees. Their position is that unvested options, rather than vested options, employees have a year to exercise them. And that unvested options, well, according to this, continue to vest. It was subject to the overall seven-year expiration period, and that's the other thing that the district court misunderstood or was apprehended about the record, was that all of these options, regardless, are subject to the seven-year expiration period. Thank you, Counselor. Thank you. Thank you. Adam Finkler, representing DuPont. May it please the Court. I'd like to emphasize three points today, but first I want to reasonably note a comment made by my colleague in her argument, which was that unvested options are unexercised. The contractual language, and this was in response to Judge McGee's question, the contractual provision and issue here states the options will be exercisable through the date, that is, one year after the date of your termination of employment, or if earlier the expiration date said fourth above. After that date, any unexercised options will expire. An option can be unexercised by virtue of its not having vested. It can be unexercised by virtue of the employee's election not to exercise or for some other reason. But an unvested option is certainly within the categories of exemptions that are unexercised and therefore expire pursuant to that provision. The three points I'd like to emphasize are one, ambiguity was not litigated in the trial court and therefore it was waived. Two, the plaintiff proffered no extensive evidence or any other basis for demonstrating an ambiguity. And three, the plaintiff's interpretation cannot be reconciled with the plain language of the contract as opposed to the district court's interpretation, which does reconcile and harmonize all language with the relevant provision. On the issue of waiver, it is important that the complaint itself, alleged that the complaint was based on, quote, the plain meaning of the award's terms and prospectus. That's paragraph 13, 17 of the complaint. In opposition to the motion to dismiss, the plaintiff argued, quote, if the court determines the contract to be ambiguous, which plaintiff does not concede that construction was disfavored upon. Plaintiff was not arguing that the contract was ambiguous or proffering any plural evidence or context or any other allegation sufficient to demonstrate an ambiguity. And then in hearing, the district judge read a detailed tentative ruling. The ruling stated clearly that the plain language reading of what's in the contract controls that was actually the judge's penultimate sentence before he opened the matter to argument. Counsel's response was, I don't disagree with what Your Honor said, except, of course, that I think the plain language of the contract should be interpreted differently. And so the district court made a finding and a reward in its order that the contract was unambiguous, but that finding was made essentially on the effective stipulation of the parties because either party was arguing an ambiguity. And, in fact, both parties were affirmatively arguing that there was no ambiguity. And this moderation of this clause does seem to be somewhat unfair. It seems to me that we're doing everything that employees perceive their award options as part of their compensation package. And that seems to come across as a bit of a swaggering. I mean, doesn't your preferred interpretation of this clause allow for the compensation to be retroactively recovered by the company before the employee even has a chance to use that compensation? No, Your Honor. Tell me why that is. The purpose of the option grants, the express purpose of the option grants, as stated in the plan and perspectives, is not merely to provide retroactive compensation or compensation for performances rendered, but to attract, motivate, and retain employees. And that is not much different than a 401K profit participation or matching program that we're all or most of us are familiar with, where the, and this is set up exactly the same way, the options could have been granted in a single shot, all at once, exercisable immediately. It's the fact that they were intended solely for compensation for past performance or as part of a contractual obligation to pay an amount certain. Instead, they were set up to vest in tranches over a period of years, subject to clear provisions stating that if an employee is terminated for any reason, whether for cause or through some accident or circumstance, not at all determined by the employee's responsibility, then those options would not be available to continue to vest and continue to be exercised because they're two of their three purposes, to retain and motivate. We're no longer operative. And so if, as we have here, the situation where the grant is not made only to compensate for services already performed, then there is no partial justification. And there's no contractual logic to allow investing after the expiration of a provision that was explicit in an amicus. The final point I would emphasize is that there was certainly no error on the part of the court in reconciling and harmonizing three sentences of the expiration provision. This is not a situation where the district court or DuPont grabbed three sentences from remote and uncommitted portions of the contract, put them next to each other, and said, this is the pathway to our preferred result. What we have is an integrated provision that can only be given full effect without vitiating or rewriting any provision of the language by adopting the construction expressed by the district court to reach the result that the plaintiff urges the court. He is forced to either nullify completely or certainly substantially rewrite the language. After that date, any unexercised options will expire. And with that, unless there are any further questions, I will submit. Thank you, counsel. Thank you. Thank you, counsel. I would like to first just very briefly address the waiver argument. The principle of the waiver is that the court of appeals should not consider arguments that were not made in the district court. Here, the argument regarding ambiguity was made in two places in our briefing, at AR 156 and AR 162. Counsel raised it in oral argument as well, saying, this is our alternative position. And the district court questioned counsel about what ambiguity would entail if I go down that path, what steps then come in the district court, even though you did specific planning in its order, that the contract is not ambiguous. That's in AR 8. And so that argument was absolutely in front of the district court and it can properly be considered by this court. Second, I would like to correct a statement I made in response to Your Honor's question about whether an unexercised option can be an unvested option. I think the answer to that is no, because the option that has invested hasn't come into the category of exercisability yet. And the plan prospectus talks about the exercisability of your options. So an option that has never come within that mandate, and the various places in the record I've pointed out that draw that distinction, it's not even subject to the framework of exercisability yet because they haven't been invested. Third, I'd like to just say that we were not required to point to any extrinsic evidence. So at this stage, at the most of the compel stage, What do you have? That's an actual consequence of finding an ambiguity to the review. The contract is ambiguous. What extrinsic evidence is there? I don't realize that you may be going outside the record a bit, but do you have anything that you can speak to? Yes, Your Honor, and that's not what we would exactly like to take discovery on at that point. So we would like to take discovery from HR executives as to what was intended when this contract was drafted and from DuPont employees as to what they understood this contract to mean at the time they signed it. I just want to follow up because unless you're not aware of the law, when it was an intolerant precedent for a child search, I think it was a step forward in setting discovery about corporate employees and interpreting the corporate document. I think one of the problems I think is the whole concept that there should be discovery on this issue. I think that the law is pretty strong that they have a chance record, which is absolutely straight forward, that interprets the corporate documents like this. And if someone were to break it, it would be very difficult, and that's just this one. But I'm not aware that Delaware courts have ever engaged in discovery to interpret the corporate document of this nature. They have plenty of benefits. Your Honor, it is true that contract interpretation is a question of law for the court, but where a contract is ambiguous. We have cited several Delaware cases where courts have looked at extrinsic evidence to help them decide whether the alternative meanings they've used by the parties are reasonable ones, and one example of that would be the Casey v. Dolly case. That's the Delaware Supreme Court. Another example of that would be the Mattel v. MGA case. That's a 9th Circuit case, but I believe also involved an application of Delaware law, where the court said we're not swayed by the respective parties' arguments about what this would mean, and the language was not clear, and they should have gone to a jury to look at the testimony on both sides and decide which was most credible. So the last point I want to make in rebuttal, and I realize I'm a little bit over time, is that the purpose of the contract, the contractual logic is only to redeem employees, but as I pointed out previously, the plan itself states that one of the purposes is to attract employees. In fact, in one of the cases that DuPont itself cited, this is the Barton v. Alexis case. This is a case that DuPont cited as an example of where a court found that stock options expired upon termination had actually expired and the employee was not entitled to them. But in that case, Your Honor, the employee testified in deposition that he understood that the stock option contract said, yeah, they're terminated. They're all gone. He understood that, but he argued, I also have this executive salary continuance plan that provides it for 12 months after my termination. I'm going to receive my salary every month for the rest of the year. He said because of that, I should also get my options because those are part of my salary. The court said, no, stock options, they're part of the stock option contract salary. That's part of your salary contract. They're different. My point in raising this is only that there's absolutely a corporate purpose to give employees at the time that they negotiate their employment contracts that type of comfort that should they're in, in this case, indeed, the employee was terminated because of corporate restructuring. It's now two different entities. Should that happen, they're not going to be left out in the dark, and they will at least have that. Thank you, Counselor. Okay. Thank you, Judge. Thank you. Thank you, Your Honor. The case just argued will be submitted for decision.
judges: Thomas, Murguia, Baylson